UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLIE F. PRINCE, PRINCE SERVICES INTERNATIONAL INC.<br><br>     Plaintiffs,<br><br>     v.<br><br>THE GOVERNMENT OF THE PEOPLE'S REPUBLIC OF CHINA, INSTITUTE OF ARCHITECTURE DESIGN AND RESEARCH, GESHAN CONSTRUCTION GROUP COMPANY LTD, GUNGSHA INTERNATIONAL CONSTRUCTION GROUP COMPANY, YEFANG CONSTRUCTION PRIVATE LIMITED, ETHIOPIAN AIRLINES, BDMA ENGINEERING PLC, YEIFI HE, GANG XIAO, YIMING HE, WAN WEI, GIRMA WAKE, BALEHAGER AYALEW<br><br>     Defendants. | 13 Civ. 02106<br><br>**OPINION** |

  Plaintiff Leslie Prince, an independent consultant, helped facilitate a development project in Addis Ababa, Ethiopia, between two Chinese construction companies and Ethiopian Airlines. Prince alleges that the

Chinese companies and Ethiopian Airlines breached their contracts to provide him with an equity stake in the project and a finder's fee, respectively.

Defendants Ethiopian Airlines and Girma Wake, the Chief Executive Officer of Ethiopian Airlines, move to dismiss the complaint. The motion to dismiss as to these two defendants is granted because Prince's breach of contract claim—the only claim in his complaint—is barred by New York's Statute of Frauds.

Additionally, Prince has moved for this court to enter a default judgment against the government of the People's Republic of China ("China") in the amount of $34 million for failure to answer his complaint. The court denies Prince's request because he has failed to provide sufficient evidence to warrant the entry of a default judgment under 28 U.S.C. § 1608(e) of the Foreign Sovereign Immunities Act ("FSIA").

## The Complaint

The following facts are drawn from the complaint and assumed to be true for purposes of resolving the motions.

Prince is the director of Prince Services International, a consulting firm, which does business as PSI Consultants Inc. On August 15, 2008, Girma Wake, the CEO of Ethiopian Airlines, engaged Prince to find investors and developers to undertake the following development projects: (1) a 5,000-person home site for Ethiopian Airlines employees, (2) an Ethiopian Airlines terminal in the west-African country of Benin, (3) a five-star, sixteen-story hotel for

2

Ethiopian Airlines in Addis Ababa, and (4) the purchase of four regional jets from China.  Prince alleges that Wake agreed to pay Prince a finder's fee of 3% of the total construction costs and promised to formalize the finder's fee agreement once Prince secured investors.[1]

    Prince traveled to China to recruit construction companies to bid on the Ethiopian Airlines' projects.  Prince subsequently entered into a consortium agreement with two Chinese companies—Geshan Construction Group Company Ltd. and the Institute of Architecture Design & Research, Chinese Academy of Science ("ADCAS")—to develop the Ethiopian Airlines housing project.[2]  Prince alleges that ADCAS is owned by the Chinese government.  On November 3, 2008, in Hangzhou, China, the parties signed an agreement

---

[1] In his opposition to defendants' motion to dismiss, Prince states that Ethiopian Airlines agreed to pay him a finder's fee of 6%.  Specifically, Prince states that defendants agreed that the fee would be "[p]aid in two parts, 3% immediately upon securing the Investor Developer, and bringing them into Addis Ababa to enter into agreement with the [sic] Ethiopian Airlines, on the project and thereafter, the remaining 3% would be paid half-way through the project." However, this assertion is directly contrary to the terms of the "Consulting Services Agreement", which Prince attached to his complaint, as well as contrary to Prince's allegations in his complaint.  Accordingly, for the purposes of resolving this motion, the court considers the finder's fee to amount to 3%.

[2] In his complaint, Prince alleges that he signed the consortium agreement with three companies—including Gungsha Construction Company.  However, Gungsha is not listed in the agreement, which Prince attached to his complaint, as a party to the contract.  Thus, for the purposes of resolving this motion, the court considers there to be two Chinese companies—Geshan and ADCAS—that were parties to the agreement.

formalizing the consortium.  By the terms of the agreement, the Chinese companies agreed that Prince Services International "shall have at least 3% ownership interest in the project."  In his complaint, Prince states that he and the Chinese partners agreed that he was entitled to 6% equity in the project.

On December 1, 2008, the Chinese companies, Prince, and Wake met at the Ethiopian Airlines headquarters in Addis Ababa to finalize the deal.  Wake helped secure the visas for members of the Chinese companies to travel to Ethiopia.  At the meeting, Ethiopian Airlines agreed to fund 30% of the project, with the Chinese companies agreeing to fund the remaining 70%.

After the parties reached an agreement, Prince approached Wake to discuss his compensation.  Prince requested that Wake sign the consultancy-fee agreement.  However, according to Prince, while Wake congratulated him on his work, Wake told Prince that first they should celebrate and then he would sign the agreement.  Wake never signed the agreement.

Prince claims that once the Chinese companies and Ethiopian Airlines brokered the development agreement, the parties then cut all ties with him.  Both Ethiopian Airlines and the Chinese companies refused to pay him for his services.  On December 22, 2008, the Chinese companies submitted a letter to Prince terminating the consortium agreement.  The companies stated that by the terms of the agreement, they were able to withdraw from the consortium based upon misrepresentations by Prince during their negotiations.  Prince denies all of the alleged misrepresentations.

In August of 2009, the Chinese companies established a development corporation—Yeshang Construction Private Limited— in Ethiopia, presumably to begin work on the housing development project. Prince was not included in this process.

Prince claims that he was instrumental in securing the business deal between Ethiopian Airlines and the Chinese companies to develop the housing project. He claims that the parties breached their agreement with him when they decided not to pay him for his work in facilitating the deal. Prince asks the court to require the Chinese companies to pay him 6% of the total value of the housing development project and also, to require Ethiopian Airlines to pay the 3% finder's fee. While Prince estimates that the total cost of all the proposed development projects is $7 billion, he has not submitted an estimate as to the cost of the housing construction project.

Prince filed his complaint on March 29, 2013. Prince named the following defendants: the government of the People's Republic of China, ADCAS, Geshan Construction Group. Co. Ltd., Gungsha International Construction Company, Yefang Construction Private Limited, Ethiopian Airlines, BMDA Engineering PLC, Yeifi He, Gang Xiao, Yiming He, Wan Wei, Girma Wake, and Balehager Ayalew. The various individually named defendants work at the defendant companies. Prince served each of the named defendants with his complaint.

To date, only Ethiopian Airlines and Girma Wake have filed notices of appearances. On July 22, 2013, Prince filed a motion requesting that the court enter a default judgment against the government of China and award Prince $34 million in damages.

## Discussion

**1. Ethiopian Airlines and Wake's Motion to Dismiss**

Defendants Ethiopian Airlines and Wake request that the court dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim for which relief can be granted. The court need not address all of defendants' arguments because the court finds that neither Ethiopian Airlines nor Wake entered into a legally-enforceable contract with Prince.

*Choice of Law*

In considering Prince's breach of contract claim, the court must first decide whether to apply New York, New Jersey, or Ethiopian law. There are reasons for considering the law from each of these forums.

To begin with, the present litigation arises from a business development project in Ethiopia. Moreover, Prince attempted to finalize the contract with Wake during their meeting in Addis Ababa, Ethiopia.

However, the consultancy contract that Prince drafted and seeks to have enforced in the present litigation, provides that New Jersey law shall apply to all disputes arising from the business deal. Despite this choice-of-law

provision in the unsigned consultancy agreement, Prince elected to file suit in the Southern District of New York.  In their motion to dismiss, defendants Wake and Ethiopian Airlines only applied New York law in contesting Prince's claim for breach of contract and in his opposition, Prince has not objected to the application of New York law to this case.

A federal court sitting in a diversity of citizenship case must apply the law of the forum state to determine the choice-of-law analysis.  Fieger v. Pitney Bowes Credit Corp., 21 F.3d 386, 393 (2d Cir. 2001).  In New York, the first question to resolve is whether there is an actual conflict of laws.  Dragushanksy v. Nasser, No. 12 Civ. 9240 (TPG), 2013 WL 4647188, *5 (S.D.N.Y. Aug. 29, 2013).

In this analysis, the court need not consider Ethiopian law.  A federal court sitting in a diversity case may, in its discretion, take judicial notice of the law of a foreign country.  Fed. R. Civ. P. 44(1).  However, if either party in this case intended to invoke Ethiopian law, then pursuant to Rule 44(1), the party should provide notice in its pleadings to the court.  See Gold-Flex Elastic Ltd. v. Exquisite Form Industries, Inc., No. 95 Civ. 3881 (LMM), 1995 WL 764191 * 3 (S.D.N.Y. Dec. 28, 1995).  The parties have not provided such notice.  The court declines to raise and investigate the issue *sua sponte*.  Id.  The parties' silence on the applicability and substance of Ethiopian constitutes a waiver of the issue.  Id.; Vishipco Linve v. Chase Manhattan Bank, N.A., 660 F.2d 854, 860 (2d Cir. 1981).

Thus, the court is left to decide whether there is a conflict between New York and New Jersey law. In their motion to dismiss, defendants rely exclusively on New York law. In his opposition brief, Prince does not cite any specific state law—either New York or New Jersey—in setting forth his arguments. Moreover, Prince does not contest the applicability of New York law to this case.

Accordingly, under the principle that implied consent to use a forum's law is sufficient to establish choice of law, this court will apply New York law. See Tehran-Berkeley Civil and Environmental Engineers v. Tippetts-Abbett-McCarth-Stratton, 888 F.2d 239, 242 (2d. Cir 1989).

***Application of New York Law***

The question before the court is whether the alleged oral contract for services between Prince and Ethiopian Airlines is legally enforceable. The New York Statute of Frauds provides that an unwritten agreement to pay compensation for services rendered in negotiating the purchase of a business opportunity or an interest therein is void. N.Y. Gen. Oblig. L. § 5–701(a)(10). "Negotiating" is statutorily defined to include both "procuring an introduction to a party to the transaction" and "assisting in the negotiating or consummation of the transaction." Id.

Both the New York Court of Appeals and this court have applied N.Y. Gen. Oblig. L. § 5–701(a)(10) to bar the enforcement of unwritten agreements for services where the plaintiff has requested compensation in exchange for

8

having identified a business opportunity, secured potential business partners, and contributed to the formation of a business team.  See Snyder v. Bronfman, 13 N.Y. 3d 504, 509 (2009); Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 612-613 (S.D.N.Y. 2010). See also, Transition Investments, Inc. v. The Allen O. Dragge, Jr. Family Trust, et al., No. 11 Civ. 04775(AJN), 2012 WL 1848875 (S.D.N.Y. May 21, 2012).

In this action, Prince alleges that in reliance on defendants' assurances that he would receive a finder's fee, he identified various business opportunities for Ethiopian Airlines, located Chinese construction companies to participate in the development projects, and contributed to the ultimate formation of a business team that included both Ethiopian Airlines and the Chinese construction companies.  Prince claims that defendants breached their agreement when defendants subsequently refused to pay him the 3% finder's fee.  However, Prince does not have a signed contract memorializing the alleged business agreement with defendants.  In the proposed contract with Ethiopian Airlines that Prince attached to his complaint, the signature line for Ethiopian Airlines remains blank.

The court finds that Prince has filed a breach of contract claim that is barred by New York's Statute of Frauds.  N.Y. Gen. Oblig. L. § 5–701(a)(10). Prince impermissibly relied upon his unwritten agreement with defendants when he sought out business partners for Ethiopian Airlines and assisted in the formation of a business team involving Ethiopian Airlines and the Chinese

construction companies.  Id.  See also, Bronfman, 13 N.Y. 3d at 509; Steinbrenner, 680 F. Supp. 2d at 612-613.  Thus, as there was never an enforceable contract between Prince and Ethiopian Airlines, Prince cannot recover for a breach of contract.

Accordingly, the court grants defendants' motion to dismiss Prince's complaint.

### 2. Prince's Motion for Default Judgment

Prince has requested that the court enter a default judgment against the government of China in the amount of $34 million.  Prince served the government of China with his complaint and China has neither answered nor filed a motion to dismiss.

Under the FSIA, if a claimant has properly served a foreign sovereign and the sovereign has failed to respond within sixty days of service, the court may enter a default judgment.  28 U.S.C. § 1608(d).

However, the FSIA provides that a court should not enter a default judgment against a foreign state unless the claimant establishes its claim or right to relief by evidence satisfactory to the court.  28 U.S.C. § 1608(e).  Congress promulgated § 1608(e) to provide foreign sovereigns with the same protections from default judgments that the federal government enjoys under Federal Rules of Civil Procedure 55(e).[3]  See Commercial Bank of Kuwait v.

---

[3] Pursuant to a 2007 amendment, Rule 55(e) is now 55(d).  See Advisory Committee Notes to Fed. R. Civ. P. 55.

10

Rafidian Bank, 15 F.3d 238, 242 (S.D.N.Y. 1994).  If a sovereign has defaulted, then the court must determine whether the plaintiff's allegations are supported by evidence. Id.  The burden is on the moving party to demonstrate that it is appropriate for the court to enter a default judgment.  See Nationsbank of Florida v. Banco Exterior de Espana, 867 F. Supp. 167, 174 (S.D.N.Y 1994); Commercial Bank of Kuwait, 15 F.3d at 242.  The Second Circuit has held that § 1608(e) does not require that the district court conduct an evidentiary hearing or make explicit findings where the record provides sufficient information for the court to make a decision.  See Commercial Bank of Kuwait, 15 F.3d at 242.

In his complaint, Prince provides the following justification for his request that the court enter a default judgment: "I ask the court to request of the Chinese Government to honor this agreement because ADCAS is state owned company thus the govt of the Peoples Republic of China is liable for the company performance.  I ask the Court to recommend the harshest of punishment that China can hand down on these Chinese defendants."  The court understands Prince's argument to be that because China owns ADCAS, China is responsible for ADCAS's breach of contract and liable for the financial harm that it caused to Prince.

This claim is the only evidence that Prince has provided to support his motion for the entry of a $34 million default judgment against the government of China.

However, to begin with, Prince has not put forth any evidence to support his claim that the government of China owns ADCAS.  The consortium agreement signed by PSI, Gehsan, and ADCAS to construct the housing project for Ethiopian Airlines does not support Prince's claim that ADCAS is owned by China.  Instead, the agreement defines ADCAS as a "corporation organized under the laws of People's Republic of China, with offices for the transaction of business at 118 South Hushu Road, Wenhui Mansion 17th Floor, City of Hangzhou, Province of Zhjiang, China 310014."  This is the same type of corporate information (albeit with a different address) as provided for the Geshan Construction Company, which Prince does not allege is a state-owned company.

Additionally, Prince has not provided any evidentiary support for his claim that he is owed $34 million.  The amount requested appears to be completely arbitrary.

The record provides no basis for the court to enter a default judgment against the government of China.  There is no need for the court to conduct a hearing or any additional fact-finding on this issue.

## Conclusion

Defendants' motion to dismiss is granted.  Prince's request that this court enter a default judgment against China is denied.

This opinion resolves the motions listed as item numbers 18, 21, and 24 on the docket.

SO ORDERED.

Dated: New York, New York
March 31, 2014

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/14