UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LESLIE F. PRINCE,

                         Plaintiff,

     v.

GOVERNMENT OF THE PEOPLE'S
REPUBLIC OF CHINA ET AL.,

                       Defendants.

No. 13-cv-2106 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/17

Having received no answer or other response to his complaint for breach of contract filed on March 29, 2013, plaintiff Leslie F. Prince, *pro se*, moves for default judgment against defendants The Government of the People's Republic of China ("PRC"); the Institute of Architecture, Design and Research, Chinese Academy of Science ("ADCAS") and its employee, Wan Wei; Geshan Construction Group Co. Ltd. ("Geshan") and its employee, Yifei He; Yefeng Construction Private Limited Company ("Yefeng") and its employee, YiMing He; BMDA Engineering PLC ("BMDA") and its employee, Balahager Ayalew; and Gungsha International Construction Private Limited ("Gungsha"). For the reasons that follow, the court

1

denies plaintiff's motion in its entirety. Additionally, in consideration of the Second Circuit's July 27, 2016 mandate, the court certifies plaintiff's dismissed claims against defendants Ethiopian Airlines and Girma Wake as final judgments pursuant to Federal Rule of Civil Procedure 54(b).

**BACKGROUND**

I. **Facts**

The court assumes familiarity with the facts of this case, which are recounted at length in the March 31, 2014 ruling. ECF No. 30. For purposes of resolving this motion, the court provides a brief account of the relevant facts, which are drawn from plaintiff's complaint and assumed to be true.

Plaintiff Leslie F. Prince is the President and Chief Executive Officer of a consulting firm, Prince Services International, Inc. ("PSI"). ECF No. 1, at 9. In late 2008, plaintiff traveled to the People's Republic of China ("PRC") in an effort to recruit construction companies to work on a number of development projects for Ethiopian Airlines ("EA"). ECF No. 1, at 6. Plaintiff became involved with the EA projects after being contacted by EA's Chief Executive Officer, Girma Wake. ECF No. 1, at 6. Plaintiff secured two companies for the work—Geshan Construction Group ("Geshan") and the Institute of Architecture Design & Research, Chinese Academy of Science ("ADCAS").[1] ECF No. 1, at 6. PSI, Geshan, and ADCAS formalized the arrangement in a Consortium Agreement dated

---

[1] As discussed in the March 31, 2014 ruling, for the purposes of resolving this motion, the court considers Geshan and ADCAS to be the only two construction companies that were parties to the agreement. While plaintiff alleges that Gungsha Construction Company was also a party, Gungsha is not listed in the agreement that plaintiff attached to his complaint. See ECF No. 1, Ex. D; see also ECF No. 30, at 3 n.2.

2

November 3, 2008. ECF No. 1, Ex. D, at 1. The stated terms included that PSI would "have at least 3% ownership interest in the Project, which interest shall be itemized in the Financial Proposal submitted to Ethiopian Airlines by this Consortium." ECF No. 1, Ex. D, at 2.

EA, Geshan, ADCAS, and plaintiff met again one month later on December 8, 2008. ECF No. 30, at 4. During this meeting, EA agreed it would fund 30% of the development projects, with Geshan and ADCAS funding the balance. ECF No. 30, at 4. Plaintiff claims that he was subsequently cut out of the arrangements and was denied the agreed-upon compensation for his role in facilitating the deal. ECF No. 1, at 6. Geshan and ADCAS submitted a letter to plaintiff on December 22, 2008, which purported to officially terminate the agreement based on alleged misrepresentations made by plaintiff during negotiations. ECF No. 1, Ex. E, at 1. In August 2009, the construction companies together established Yefeng Construction Private Limited, a new corporation formed under Ethiopian law, presumably to start work on the housing development project. ECF No. 1, Ex. F.

Plaintiff filed a complaint in the above-captioned case on March 29, 2013, alleging that (1) EA and its CEO, Wake, had breached the contract with plaintiff by failing to pay his 3% finder's fee; and (2) the Chinese construction companies had breached their contract with plaintiff by filing to pay him 6% of the total value of the housing project. ECF No. 1, at 6.

## II. Procedural History

On March 31, 2014, this court issued an opinion granting the motions to dismiss filed by defendants Ethiopian Airlines ("EA") and Girma Wake ("GW"), finding that neither defendant had entered "entered into a legally enforceable contract with [plaintiff]." ECF No. 30, at 6. Applying New York law, the court found that plaintiff's breach of contract claim was "barred by New York's Statute of Frauds." ECF No. 30, at 9. As to plaintiff's motion for default judgment, the court addressed the request only as it applied to defendant PRC. Concluding the motion was deficient under the standards set forth in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, *et seq.* (2012), the court denied plaintiff's request. ECF No. 30, at 10-12. The court held that the record also provided no basis for the court to enter default judgment against PRC insofar as plaintiff had failed to support his claim that PRC owned ADCAS. ECF No. 30, at 12. Further, the court found that the claim for $34 million "appear[ed] to be completely arbitrary." ECF No. 30, at 12. On October 2, 2014, the court denied plaintiff's motion for reconsideration, ECF No. 36, and plaintiff appealed that denial on October 15, 2014. ECF No. 39.

The Second Circuit dismissed plaintiff's appeal for lack of jurisdiction on July 27, 2016. ECF No. 49. First, "because denial of a default judgment is not a final order," the March 31, 2014 decision left the case " 'open, unfinished, or inconclusive' with respect to all of [plaintiff's] claims . . . not against EA and Wake." ECF No. 49, at 6 (quoting *United States ex rel. Polansky v. Pfizer, Inc.*, 762 F.3d 160, 163 (2d Cir. 2014)). Second, the district court's failure to enter

4

judgment under Federal Rule of Civil Procedure 54(b) as to the claims against EA and Wake meant they, too, were not " 'final decision[s]' within the meaning of § 1291." ECF No. 49, at 3. "Express[ing] no view as to whether, on remand," this court might certify those claims "or otherwise clarify the basis for . . . total dismissal," the Second Circuit remanded the case for further consideration in light of its ruling. ECF No. 49, at 6.

On June 3, 2017, plaintiff filed the instant motion, requesting the court to enter default judgment against defendants PRC, ADCAS, Wei, Geshan, Yifei He, Yefeng, YiMing He, BMDA, Ayalew, and Gungsha. ECF No. 63.

## DISCUSSION

### I. Motion for Default Judgment

Plaintiff Prince moves for default judgment against defendants The Government of the People's Republic of China ("PRC"); the Institute of Architecture, Design and Research, Chinese Academy of Science ("ADCAS") and its employee Wang Wei; Geshan Construction Group Co. Ltd. ("Geshan") and its employee Yifei He; Yefeng Construction Private Limited Company ("Yefeng") and its employee YiMing He; BMDA Engineering PLC ("BMDA") and its employee Balehager Ayalew; and Gungsha International Construction Private Limited ("Gungsha"). Because default against a foreign sovereign and private parties are governed by different standards, the courts addresses the claim against PRC and the claims against the private defendants separately below.

A. <u>The People's Republic of China</u>

The jurisdiction of United States courts over actions against foreign sovereigns is governed by the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1608 (2012); *see also Mobil Cerro Negro, Limited v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017). The FSIA empowers federal courts to exercise personal jurisdiction over foreign sovereigns when one of its exceptions from jurisdictional immunity applies and the sovereign has been served with process in accordance with its provisions. *Id.* at 104; *see also Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) ("Under the FSIA . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process.").

Default judgments against foreign sovereigns are governed by 28 U.S.C. § 1608(e), which allows the entry of default only if "the claimant establishes his claim or right to relief by evidence satisfactory to the court." This standard "may be met 'through uncontroverted factual allegations, which are supported by . . . documentary and affidavit evidence.'" *In re Terrorist Attacks on September 11, 2001*, No. 03 Civ. 9848 (GBD) (FM), 2012 WL 3090979, at *8 n.1 (S.D.N.Y. July 30, 2012) (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010)). Additionally, "a copy of any such default judgment" must be sent to the foreign state in accordance with the FSIA provisions governing service of process. 28 U.S.C. § 1608(e). Courts in this Circuit have recognized a strong policy interest in avoiding the entry of default judgments against foreign sovereigns. *See Schafrann v. Republic of Venezuela*, No. 01 Civ. 10637 (NRB),

2002 WL 1766446, at *2 (S.D.N.Y. July 31, 2002); *see also First Fidelity Bank, N.A. v. Gov't of Ant. & & Barb.--Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) (noting the "great lengths" courts go to in order "to avoid default judgments against foreign sovereigns").

With respect to the motion for default judgment against PRC, the question before the court is whether plaintiff's submitted evidence makes a satisfactory showing of his asserted claim for $34 million. In support of this figure, plaintiff has produced a series of documents that he asserts provide "a complete explanation of how [he] arrived at the figures and total due" to his company and himself. ECF No. 63, Ex. 1, at 2. However, of the twenty-one exhibits that plaintiff attaches to his motion, only one provides any information pertinent to that calculation. In the first exhibit attached to his motion, plaintiff produces two documents relating financial information and one document on plaintiff's letterhead that proffers a breakdown of "other legal expenses due." ECF No. 63, Ex. 1, at 4-6. The other twenty exhibits appear to be proposed orders for default against each of the named defendants that refer back to the financial information contained in the first exhibit. *See, e.g.*, ECF No. 63, Ex. 5, at 5 ("Please see Financial Statement attached.").

Turning now to the contents of those financial statements, the court finds that plaintiff has failed to submit satisfactory evidence to justify default against defendant PRC. Plaintiff's factual allegations, while uncontroverted, are not adequately supported by documentary or affidavit evidence. The financial statement to which plaintiff's motion refers includes two documents entitled "The

Financial Statement of Facts" and "Financial Facts," and a letter from plaintiff with an attachment breaking down "the Expences [sic] due to Breach of Contract." ECF No. 63, Ex. 1, at 4-6. These documents do not provide the court with any evidence, outside of plaintiff's own attestations, related to the $34 million figure plaintiff claims he is owed.

The Financial Statement of Facts is a one-page document consisting of eight statements, four of which relate to salaries and expenses. First, plaintiff states that he "by way of [his] company (PSI) secured in excess of US $9,171,336,259.68 (Nine Billion, One-Hundred and Seventy-One Million, Three-Hundred and Thirty-Six Thousand, Two-Hundred and Fifty-Nine Dollars and Sixty-Eight Cents) in total investments and developments for the Above Mentioned Companies." ECF No. 63, Ex. 1, at 4. Second, he states that the project at issue, "which is the Ethiopian Airlines Housing Project was developed at a cost that exceeded US $5,021,336,259.68." ECF No. 63, Ex. 1, at 4. Third, that "based on the Cost of the Housing Project PSI is entitled to 3%, which is US $150,640,087.77." ECF No. 63, Ex. 1, at 4. And finally, that plaintiff, "who is the President and CEO of PSI, based on the Volume of total investment he secured earns a Salary of US $3500.00 per hr. at a weekly rate of 65 hours per week, working within Three-Time Zones." ECF No. 63, Ex. 1, at 4. The document then refers to attached "calculated salaries and expenses," which the court assumes is a reference to the Financial Facts that follows. ECF No. 63, Ex. 1, at 4. There are no signatures, business records, or other documents to support these figures.

In his Financial Facts document, plaintiff includes values and units for 5,000 houses in connection with plaintiff's role in the Ethiopian Airlines Housing Project. ECF No. 63, Ex. 1, at 5. In one column, plaintiff lists ten categories of homes alongside what appears to be the number of total units developed and the value per unit; in the second column, plaintiff lists the product of those two figures. *See, e.g.*, ECF No. 63, Ex. 1, at 5 (listing in the first column "Mod 250A 270 Homes @ US $2,664,945.94" and listing in the second "$719,535,403.80"). Plaintiff then adds the column two figures for a total of $5,021,336,259.68—in other words, the total cost plaintiff referred to in his Financial Statement of Facts. ECF No. 63, Ex. 1 4-5. This document also provides no basis for the figures included in this document.

Plaintiff also includes a letter, typed on what appears to be personal or company letterhead, showing costs related to staff salaries and other legal expenses. The letter first lists the cost of ten employee salaries as $72,800,000.00, with no breakdown of individual employees' salaries. ECF No. 63, at 6. It then goes on to list out separate costs for "Consultant Engineering," "Architectural Consultants," "Company Attorney," "Ethiopian Consultant," "Travel USA to Ethiopia @ Six (6) Trips," "Hotel & Meals Addis Ababa 45 days," "Road Transportation," and "Office Expenses," for a total of $981,350.00. ECF No. 63, Ex. 1, at 6. Plaintiff then lists a range of other apparent costs, as follows: (1) $89,000,000.00 for "Salaries + Other Legal Expenses"; (2) $161,800,000.00 for "PSI Business Losses @ 3% of Total Revenues per year"; (3) $4,854,000.00 for "Interest @ 6% Total Revenues"; and (4) $49,996,200.00 for "Estimate Taxes

9

of 30%." ECF No. 63, Ex. 1, at 6. While the court is unclear as to the relationship between certain figures and totals,[2] focusing on the "Grand Total," the court understands plaintiff to conclude that his total expenses as a result of the alleged breach of contract to be $216,650,200.00. ECF No. 63, Ex. 1, at 6. Yet again, aside from the letter itself, plaintiff provides no other evidence to support these estimates or calculations.[3]

These documents are not sufficient to support the court's entry of default judgment against PRC under the provisions of the FSIA. With no billing records, employee time entries, receipts, or supporting documentation of any kind, plaintiff has failed to submit evidence that satisfies this court of his claim to relief for $34 million against the foreign sovereign.[4] Moreover, plaintiff has not submitted evidence to show that PRC was even a party to the housing development project that forms the basis of plaintiff's breach of contract claim. As was true at the time of the court's March 31, 2014 decision, plaintiff has again failed to "put forth any evidence to support his claim that the government of China owns ADCAS," or any other party to the transaction. ECF No. 30, at 12. Thus, plaintiff's motion for default against PRC is denied.

---

[2] For example, it seems that plaintiff intended the $4,854,000.00 figure to be associated with the Interest @ 6% Total Revenues designation, but the court is not certain in light of the formatting of the letter.
[3] Indeed, the court often reaches different totals based on its own calculation of the figures in the letter.
[4] The court also takes note of the information plaintiff provided in his letter to the court dated October 29, 2014, which includes a number of visual depictions related to "the different types of houses . . . . design models, and some figures for costs." ECF No. 42, at 10. This information appears to have been an attachment on an email from plaintiff, and is likewise uncorroborated.

B. <u>Other Defendants</u>

Unlike the FSIA standard applicable to PRC, Federal Rule of Civil Procedure 55 governs plaintiff's claims against the remaining defendants—ADCAS, Wan Wei, Geshan, Yifei He, Yefeng, YiMing He, BMDA, Balahager Ayalew, and Gungsha. Pursuant to Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . ., the clerk must enter the party's default." *See Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Flower City Monitors, Inc.*, No. 6:15-cv-06446 (MAT), 2017 WL 3033787, at *2 (S.D.N.Y. July 18, 2017). Thus the entry of default is not discretionary. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015); *see also Tarazi v. Quintessential Biosciences, LLC*, No. 15 Civ. 1038 (LAK) (JCF), 2015 WL 4010477, at *2 (S.D.N.Y. July 1, 2015). After default is entered, the court may, "upon application of the party entitled to a judgment by default," proceed to enter such a judgment against the defaulting party. *O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007).

In order to properly enter default, the court must be satisfied that the defendant has been effectively served with process. *Id.*; *see also OS Recovery, Inc. v. One Groupe Int'l, Inc.*, No. 02 Civ. 8993 (LAK), 2005 WL 1744986, at *1 (S.D.N.Y. July 26, 2005) ("It is axiomatic, of course, that a court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process."). Thus, before entering default judgment, the

court "must examine the sufficiency of plaintiffs[] attempted service of process." *OS Recovery*, 2005 WL 1744986, at *1. A party seeking default judgment has the burden of establishing its entitlement to such judgment, including effective service of process, "without any prompting by the court." *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, No. 1:17-cv-1585 (GHW), 2017 WL 3638202, at *3 (S.D.N.Y. Aug. 23, 2017).

In the federal system, service of process is governed by Federal Rule of Civil Procedure 4, which requires service of a summons along with a copy of the complaint. Fed. R. Civ. P. 4(c)(1). Service must be carried out by a non-party over the age of eighteen. *Id.* 4(c)(2). The plaintiff must prove the making of service by means of the server's affidavit, unless service was made by a United States marshal or deputy marshal. *Id.* 4(*l*)(1). Proof of service is not required if the plaintiff obtains a waiver from the defendant pursuant to Rule 4(d). *See id.* 4(d)(4).

Plaintiff submits that "all parties cited in the Motion for Default Judgment were properly served by Certified U.S. Mail and International Express Mail." ECF No. 42, at 2. And the record shows that plaintiff did indeed mail copies of the summons to all named defendants via the United States Postal Service ("USPS") on April 9, 2013. *See* ECF Nos. 3-15. Attached to every proof of service form is a USPS Customs Declaration showing one of the named defendants in each "To" field and plaintiff in the corresponding "From" field. *See, e.g.,* ECF No. 14, at 4. However, the proof of service forms also indicate that plaintiff himself acted as the server—plaintiff signed on the line marked "Server's

signature," incurred $355.00 in related fees and travel, and included his address as the "Server's address." *See, e.g.*, ECF No. 14, at 2. As noted above, Rule 4 prohibits a party from acting as server. Fed. R. Civ. P. 4(c)(2).

Because plaintiff was serving corporations and individuals in a foreign country, however, the court looks to the provisions of Rule 4 that apply to service of parties outside the United States—Rule 4(f) for foreign individuals and Rule 4(h) for foreign corporations. As the provisions governing service of foreign corporations incorporate by reference the provisions governing foreign individuals, the following applies to both the corporate and individual defendants in this case. *See* Fed. R. Civ. P. 4(h)(2) (noting that "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served . . . in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery" if served outside the United States).

Rule 4(f) provides for the service of foreign individuals anywhere outside the United States in three primary ways: (1) by internationally agreed-upon means "reasonably calculated to give notice, such as those authorized by the Hague Convention"; (2) in the absence of an international agreement, by any method reasonably calculated to give notice, including "any form of mail that the clerk addresses and sends to the individual that requires a signed receipt"; or (3) by any court-ordered means "not prohibited by international agreement." *See Id.* 4(f)(1)-(3). The rules also provide separate guidance for *proof* of service with respect to foreign parties. Under Rule 4(l)(2)(A), service made pursuant to

13

internationally-agreed upon means must be proved "as provided in the applicable treaty or convention." Otherwise, service must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." *Id.* 4(l)(2)(B).

The court is not satisfied that the defendants have been adequately served with process. Because a federal court may not exercise personal jurisdiction over a defendant in the absence of effective service of summons, the court now examines "each mode of service prescribed by Rule 4(f) to determine whether service of the summons and complaint was properly effected here." *Id.*; *see also Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-cv-9258, 2014 WL 1331046, at *6 (S.D.N.Y. Mar. 31, 2014).

"As both the United States and China are signatories to the Hague Convention, that pact governs service of process by transmittal of documents abroad in this case." *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("Compliance with the Convention is mandatory in all cases to which it applies."). Accordingly, Rule 4(f)(2), which governs in the absence of an applicable international agreement, does not apply. Rule 4(f)(3) is likewise inapplicable because plaintiff did not request and this court did not order an alternative method of service in this matter. The court thus limits its analysis to Rule 4(f)(1)—service of process by internationally agreed-to means.

Several provisions of the Hague Convention bear on the attempted service in this case. First, Article 2 requires that "[e]ach contracting State . . .

14

designate a Central Authority [to] undertake to receive requests for service coming from other Contracting States." Hague Convention art. 2; *see also In re Coudert Bros. LLP*, No. 16-cv-8237 (KMK), 2017 WL 1944162, at *6 (S.D.N.Y. May 9, 2017). Second, Article 10 provides for alternative methods of service, including "by postal channels, directly to persons abroad," provided, however, that "the State of destination *does not object.*" Hague Convention art. 10 (emphasis added); *see also Zhang*, 932 F. Supp. 2d at 565. Finally, Article 15 sets forth certain conditions that must be met prior to the entry of judgment when a defendant has not appeared—*i.e.*, prior to default judgment. Hague Convention art. 15. Article 15 states, *inter alia*, that "if no certificate of service or delivery has been received," judgment may attain only if (1) "the document was transmitted by one of the methods provided for in [the] Convention," (2) "a period of time of not less than six months . . . has elapsed since the date of transmission of the document," and (3) "no certificate of any kind has been received even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." Hague Convention art. 15; *see also Zhang*, 932 F. Supp. 2d at 565.

The court notes at the outset that there is no evidence indicating that plaintiff attempted to effect service through PRC's designated Central Authority, the Chinese Ministry of Justice, pursuant to Article 2 protocol. *See Zhang*, 932 F. Supp. 2d at 563. Plaintiff also cannot rely on Article 10's allowance for service via "postal channels" because PRC is among the countries who have formally objected to such means of service, rendering Article 10 inapplicable. *See*

*Declaration/Reservation/Notification*, HCCH (2017), https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (documenting PRC's opposition to "the service of documents in the territory of the [PRC] by the methods provided by Article 10 of the Convention"). Because plaintiff did not attempt service through PRC's Central Authority under Article 2, and because Article 10 does not apply when the State of designation objects to a given alternative method, plaintiff has failed to meet the standards of Rule 4(f)(1).

In light of the foregoing analysis, the court also finds that plaintiff failed to comply with the requirements of Article 15, which permits default judgment in the absence of a return certificate. Plaintiff was obligated to comply with Article 15 because there is no evidence that a "certificate of any kind has been received." Hague Convention art. 15; *contra Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005) (finding that plaintiff did not need to comply with Article 15 where a police report qualified as a certificate). And while it is true that more than six months have passed since plaintiff mailed service, the court finds that plaintiff failed to transmit the documentation "by one of the methods provided for in [the] Convention." Hague Convention art. 15. Accordingly, plaintiff has failed to satisfy the requirements of Article 15 that would allow this court to enter default judgment absent a return certificate.

## II. Claims Against EA and Wake

In light of the Second Circuit's July 27, 2016 mandate, the court also considers the status of plaintiff's claims against defendants EA and Wake, which

were dismissed in this court's March 31, 2014 ruling. Specifically, in light of the denial of default judgment against all remaining defendants, which is not a final judgment for the purposes of 28 U.S.C. § 1291, the court considers whether the dismissed claims should be certified as final judgments under Federal Rule of Civil Procedure 54(b).

Certification under Rule 54(b) is available when (1) an action presents "multiple claims or multiple parties," (2) "at least one claim, or the rights and liability of at least one party, [is] finally decided within the meaning of 28 U.S.C. § 1291," and (3) "the district court makes an express determination that there is no just reason for delay." *See Negrete v. Citibank, N.A.*, No. 15 Civ. 7250 (RWS), 2017 WL 2963494, at *1 (S.D.N.Y. July 11, 2017) (citing *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992)). "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956)). In determining the appropriate time for the appeal of a particular claim, the court "must take account of both the policy against piecemeal appeals and the equities between or among the parties." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011). Certification must serve the "interests of sound judicial administration and efficiency," insofar as a district court should generally decline to apply Rule 54(b) if the issues that remain to be litigated are the same or closely related. *American Fed'n of Musicians v. Atl. Recording Corp.*, No. 15-cv-6267 (GHW), 2016 WL 6069212, at *2 (S.D.N.Y. Oct.

4, 2016) (internal quotations omitted) (quoting *Novick*, 642 F.3d at 312-13). On the other hand, "in the infrequent harsh case," certification should alleviate the danger of hardship or injustice caused by delay. *Negrete*, 2017 WL 2963494, at *1.

Here, the court finds that the considerations under Rule 54(b) militate in favor of certifying for appeal the claims against EA and Wake that were dismissed in the March 31, 2014 ruling. First, plaintiff's case undoubtedly involves multiple parties. Plaintiff brought breach of contract claims against thirteen defendants.[5] Second, the dismissal of the claims against EA and Wake constituted a final decision within the meaning of 28 U.S.C. § 1291. As the court's dismissal of plaintiff's claim was based on the categorical unenforceability of the oral agreement between plaintiff and the moving defendants, the ruling finally decided plaintiff's right to recovery against EA and Wake and defendants' corresponding liability under that agreement.

The threshold criteria having been satisfied, the court must next examine whether there exists any "just reason for delay." Considering both the interests of judicial efficiency and the equities of the parties, the court determines that there is no just reason for delay in this case. With respect to the interests of judicial administration, the dismissed and surviving claims are not

---

[5] Notably, however, plaintiff's claims against EA and Wake were based on an alleged agreement entirely distinct from the contract upon which plaintiff bases his claim against the remaining defendants. Compare ECF No. 1, Ex. B ("PSI Draft Agreement with Ethiopian Airlines"), with ECF No. 1, Ex. D ("Consortium Agreement"). Plaintiff also seeks different relief based on each agreement. Under the agreement with EA and Wake, plaintiff claims that he is entitled to a 3% finder's fee. Under the agreement with the non-appearing defendants, plaintiff claims that he is entitled to 6% of the total value of the housing development project. ECF No. 30, at 5.

18

so closely interrelated that certification would result in piecemeal litigation. Indeed, plaintiff's breach of contract claims are based on two separate agreements—the dismissed claims were based on an unsigned oral agreement, while the claims against the remaining defendants are based on a written and signed agreement. *Compare* ECF No. 1, Ex. B ("PSI Draft Agreement with Ethiopian Airlines," unsigned), *with* ECF No. 1, Ex. D ("Consortium Agreement," signed). Thus, while the agreements are related to the same alleged project, a final decision with respect to the enforceability of the EA/Wake agreement would not risk the appellate court having to revisit that agreement during any later appeal by the nonmoving defendants. Put another way, a later appeal on the Consortium Agreement would not require the appellate court to review and interpret the EA/Wake agreement again.

Second, on the equities, the court finds that in this case, "adherence to the normal practice would 'cause unusual hardship or work an injustice.'" *Adrian v. Yorktown*, 210 F. App'x 131, 133 (2d Cir. 2006). Because the remaining defendants have yet to appear, denying certification of the claims that were dismissed against the two responding defendants would be to make plaintiff's ability to appeal contingent on their unassured eventual appearance or the success of any future motions for default against them. The court thus finds that, given the circumstances of this case, denying certification would cause plaintiff unusual hardship. Accordingly, the claims against EA and Wake that were dismissed on March 31, 2014 are certified for appeal under Rule 54(b).

**CONCLUSION**

For the reasons provided above, the court denies plaintiff's motion for default judgment and certifies the claims that were dismissed in the March 31, 2014 decision. First, plaintiff has failed to make a satisfactory showing of his asserted claim for $34 million against the Government of the People's Republic of China under the heightened standard for default against foreign sovereigns under the Foreign Sovereign Immunities Act. Second, plaintiff has not met his burden of establishing his entitlement to default judgment against the remaining defendants because he has failed to demonstrate they were adequately served with process. Finally, the court certifies plaintiff's previously dismissed claims against defendants Ethiopian Airlines and its CEO Girma Wake as final judgments pursuant to Federal Rule of Civil Procedure 54(b).

SO ORDERED.

Dated: New York, New York
October 25, 2017

Thomas P. Griesa
U.S. District Judge